Michael S. Kun (SBN 208684)
Kevin D. Sullivan (SBN 270343)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, CA 90067
Telephone:  (310) 556-8861
Facsimile:  (310)-553-2165
mkun@ebglaw.com
ksullivan@ebglaw.com

Attorneys for Defendant
POPULUS GROUP, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TAYLOR, on behalf of himself and other similarly-situated employees,<br><br>            Plaintiff,<br><br>     vs.<br><br>POPULUS GROUP, LLC, a Michigan Limited Liability Company; and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: **'20CV0473 BAS BLM**<br><br>**NOTICE OF REMOVAL OF ACTION BY DEFENDANT POPULUS GROUP, LLC PURSUANT TO 28 U.S.C. §§ 1332 AND 1441(b)** |

- 1 -

Firm:50147293v2

Notice of Removal

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Populus Group, LLC ("Defendant"), contemporaneously with the filing of this notice, is effecting the removal of the above captioned action, *Jeffrey Taylor v. Populus Group, LLC and DOES 1 through 10, inclusive*, Case No. 37-2019-00067818-CU-OE-CTL, from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California.

The removal is based on 28 U.S.C. sections 1332 and 1441(b), specifically, and on the following grounds:

## PROCESS, PLEADINGS, AND ORDERS

1. On or around December 20, 2019, Plaintiff Jeffrey Taylor ("Plaintiff") commenced a civil action in the Superior Court of the State of California, County of San Diego, where the case was assigned Case No. 37-2019-00067818-CU-OE-CTL. True and correct copies of the original Summons, Complaint, Civil Cover Sheet and related documents that Populus Group, LLC received on February 14, 2020 are attached hereto as Exhibit A.

2. Exhibit A constitutes all the process, pleadings and orders served on any party in the state court action.

3. Defendant is also informed that on or about February 18, 2020, Plaintiff filed his First Amended Complaint (the "FAC") in the Superior Court. Defendant has not been served with the FAC, although Defendant attaches it here as Exhibit B.

## BASIS FOR REMOVAL

4. This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332, and is one which may be removed to the United States District Court by Defendant pursuant to the provisions of 28 U.S.C. sections 1332(d), 1441 and 1453 in that it is a purported class action in which there

are more than 100 putative class members, it is between citizens of different states, and the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

5. CAFA was enacted to expand federal jurisdiction over purported class actions. It provides that a purported class action may be removed in accordance with 28 U.S.C. section 1446 if: (a) membership in the putative class is not less than 100; (b) any member of the plaintiff class is a citizen of a foreign country or a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d), 1453(b).

6. As explained more fully below, this Court has original jurisdiction under CAFA over all claims brought by Plaintiff, on behalf of himself and all members of the putative class. Because Plaintiff's action could have been filed in this Court, Defendant may remove it pursuant to 28 U.S.C. section 1441.

**A.   Size of the Putative Class**

7. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. § 1332(d)(5)) is satisfied here because the putative class has more than 100 members.

8. Plaintiff seeks to represent all of Defendant's non-exempt employees in California in the four years prior to filing suit. (FAC, ¶ 31.)

9. Defendant has employed more than 6,600 non-exempt employees in California since December 20, 2015 (four years prior to the filing of the Complaint). (Long decl., ¶ 7.) Accordingly, the putative class has more than 100 members.

**B.   Citizenship**

10. CAFA's requirement that any one member of the proposed class be a citizen of a state different from any defendant (28 U.S.C. § 1332(d)(2)) is also satisfied here.

11. Defendants are informed and believe, and on that basis allege, that Plaintiff is a citizen of California. As such, for purposes of removal, minimal

- 3 -

Firm:50147293v2                                            Notice of Removal

1 diversity it satisfied. "A party's allegation of minimal diversity may be based on 'information and belief.'" *Ehrman v. Cox Communications Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (quoting *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014). Moreover, information supplied to Defendant by Plaintiff and maintained in Defendant's files reflects that Plaintiff has lived and worked in California since at least 2015, and that he received his high school diploma in San Diego, California. (Long decl., ¶ 5.) Plaintiff also avers in his FAC that, at "all relevant times, he was employed by Defendant[] as a non-exempt employee in San Diego County." (FAC, ¶ 10.) He also avers in his FAC that he worked in San Diego County in California from October 2018 until July 2019. (*Id.*, ¶ 5.) All of these facts are indicia of Plaintiff's California citizenship. *CarMax Auto Superstores CA LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1091, fn. 38 (C.D. Cal. 2015) ("Allegations that a party has an extensive and continuous period of residence and employment in a state are sufficient to establish that the party is a citizen of the state"); *Lew v. Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986) (noting that the factors relevant to domicile determination include residence and place of employment); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) (observing "that the party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change").

12. Defendant is a limited liability company organized under the laws of Michigan and maintains its principal place of business and corporate headquarters in Michigan. (Philbrick decl., ¶ 3.) As a limited liability company, Defendant has two members – Robert Herrera and Deerpath Capital, LLC. (*Id.*, ¶ 4.) Mr. Herrera resides in Portland, Oregon. (*Id.*) Deerpath Capital is incorporated under the laws of the State of Maryland and maintains its principal place of business in Hanover, Maryland. (*Id.*) "In determining whether there is diversity of citizenship between

1 corporate parties, a corporation shall be deemed to be a citizen of any State by which
2 it has been incorporated and of the State where it has its principal place of business."
3 *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002)
4 (internal citations omitted).

5  13. For these reasons, the requirements for diversity jurisdiction are met
6 because Plaintiff and Defendant are citizens of different states.

**C.  Amount in Controversy**

8  14. CAFA's requirement that the aggregate amount in controversy
9 exceeds $5,000,000.00, exclusive of interest and costs, is satisfied here as well.
10 Although Defendant disputes liability and damages, the damages and penalties
11 Plaintiff claims for himself and the putative class of more than 1,000 current and
12 former non-exempt employees whom they seek to represent exceed $5,000,000.00.[1]

13  15. The FAC does not specify the amount in controversy. The failure of a
14 complaint to specify the total amount of damages sought does not deprive this Court
15 of jurisdiction. *See, e.g.*, *White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 26
16 (S.D. W.Va. 1994) (defendant may remove suit to federal court notwithstanding the
17 failure of plaintiff to plead a specific dollar amount in controversy).

18  16. The FAC seeks damages and penalties for a variety of alleged wage-
19 hour violations for a period commencing on December 20, 2015. The FAC does
20 not identify the total amount of damages or penalties claimed by the putative class.
21 Plaintiff alleges that he and the putative class are entitled to recover unpaid
22 overtime, regular and minimum wages, wage statement penalties, waiting penalties,
23 costs, attorneys' fees and restitution in unspecified amounts.

---

[1] "[T]he amount in controversy is determined at the time of removal. . . ." *Ray v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 53155, at *14 citing *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994, 998 (9th Cir. 2007); 28 U.S.C. 1446(b)). Here, Defendant has used an February 23, 2020 date simply as a matter of convenience. Of course, calculating potential exposure through the date of removal – March 14, 2020 – would result in a larger amount in controversy.

17. The putative class consists of at least 6,656 current and former non-exempt employees of Defendant. (Long decl., ¶ 7.) The average base hourly rate paid to the putative class from December 20, 2015 through February 23, 2020 was $45.36. (*Id.*) The putative class worked a total of 294,701 workweeks during this time period, averaging 34.89 hours worked per week during this time period. (*Id.* at ¶ 8.) Approximately 80,842 total wage statements were provided to the putative class from December 20, 2018 through February 23, 2020. (*Id.* at ¶ 10.) The putative subclass of former non-exempt employees consists of at least 4,662 individuals. (*Id.* at ¶ 9.)

18. For a putative class of more than 6,650 persons, Plaintiff seeks, *inter alia*, recovery for allegedly unpaid minimum, regular and overtime wages for a period of four (4) years. (FAC, ¶¶ 1, 31.) Plaintiff alleges that he and the putative class worked were subject to a time-rounding policy that was not neutral and that if they clocked in 10 to 15 minutes before a scheduled start time, they were not paid for that time. (FAC, ¶ 6.) Plaintiff further alleges "that examination of time and pay records will show that [Defendant] knew it was rounding time, and almost exclusively in favor of the employer and not the employee, for generally as much as 10 minutes per shift." (*Id.*)

19. In light of the allegations in the FAC and the example Plaintiff uses, it is reasonable to assume that Plaintiff claims there were, on average, 8 minutes lost per shift, five days per week, per putative class member. It is also reasonable to assume a 100% violation rate. *E.g.*, *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1150 (C.D. Cal. 2010) (finding that because "Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, at *16 (C.D. Cal. Apr. 28, 2015) (concluding that using "a 100% violation rate is proper when the plaintiff's complaint alleges that the defendant always engages in labor

- 6 -

violations."). Using only a 90% violation rate here, the amount in controversy on this claim for unpaid wages alone exceeds $8,000,000.[2]

20. Plaintiff also seeks waiting time penalties on behalf of a putative subclass of more than 4,650 individuals. (FAC, 26:8–11; *id.*, ¶ 35; Long decl., ¶ 9.) As explained above, using a 100% violation rate is reasonable in light of Plaintiff's allegation that time-rounding resulted in rounded time "almost exclusively in favor of the employer and not the employee," and thus, according to Plaintiff, nearly all – if not all – putative class members lost wages. *E.g.*, *Coleman*, 730 F. Supp. 2d at 1150; *Sanchez*, 2015 U.S. Dist. LEXIS 55667, at *16. Even using a 90% violation rate, the amount in controversy for the waiting time claim alone is nearly $40,000,000.[3]

21. Plaintiff also seeks penalties under California Labor Code section 226(e) for alleged wage statement violations. (FAC, 26:5–7; *id.*, ¶ 34.) The statute of limitations on this claim is one year. Cal. Code Civ. Proc. § 340(a). As such, the relevant time period is from December 20, 2018 through the present. Although wage statements were provided more often than required by law – *i.e.*, once per week rather than once every other week (*see* Cal. Lab. Code § 204(a)), the amount in controversy on this claim alone, again assuming a 90% violation rate, exceeds $3,500,000, and that is assuming the lower $50 penalty applies instead of the $100

---

[2] The amount-in-controversy calculation assumes eight minutes per shift, five shifts per week have not been compensated. This results in 40 minutes of uncompensated time per week. Because there were 294,701 weeks worked by the putative class, at an average base hourly rate of $45.36, this results in $8,020,582.42. (0.666666 hours of uncompensated time per week x 294,701 weeks worked x $45.36 per hour x 0.90 violation rate = $8,020,582.42.)

[3] Thirty days (maximum statutory penalty under Cal. Lab. Code § 203) x 6.89 hours per day x $45.36 average base hourly rate x 4,662 former non-exempt employees x 0.90 violation rate = $39,339,451.57.

Firm:50147293v2                                                                 Notice of Removal

penalty that would be available.[4]  *See Ritenour v. Carrington Mortg. Servs. LLC*, 2017 U.S. Dist. LEXIS 1747, *9 (C.D. Cal. Jan. 5, 2017) (regarding wage statement claims, "Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations.").

22.   Based on his claims, Plaintiff also seeks to recover attorneys' fees.  In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit reversed the district court's remand order under CAFA because the district court erred by failing to include future attorneys' fees recoverable by statute or contract when determining whether the amount in controversy was met.  *Id.* at 788.  Because the *Fritsch* plaintiff had demanded attorneys' fees for alleged Labor Code violations under sections 218.5, 226 and 1194, the Ninth Circuit held that, "Because the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."  *Id.* at 794.  Like the plaintiff in *Fritsch*, Plaintiff here demands attorneys' fees pursuant to Labor Code sections 218.5, 226 and 1194.  (FAC, 27:13–15.)  Accordingly, attorneys' fees are included in the amount in controversy here.  Assuming attorneys' fees of 25% (the Ninth Circuit's benchmark[5]) of the nearly

---

[4] The calculation is as follows: $50 penalty per allegedly non-compliant wage statement x 80,842 at-issue wage statements during the relevant one-year statute of limitations period (Long decl., ¶ 10) x 0.90 violation rate = $3,637,890 in wage statement penalties.

[5] The Ninth Circuit's established benchmark of 25% of damages for an award of attorneys' fees in class actions provides a reasonable basis to determine the amount of attorneys' fees that may be recovered in this case.  *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Rwomwijhu v. SMX, LLC*, 2017 U.S. Dist. LEXIS 31553, at *16–17 (C.D. Cal. Mar. 3, 2017) (adding 25% in attorneys' fees in determining the amount in controversy for CAFA jurisdiction).

$51,000,000[6] in total alleged damages, restitution, and penalties sought, the amount in controversy on Plaintiff's attorneys' fees would be nearly $12,750,000.[7]

23.  In his FAC, Plaintiff also seeks injunctive relief. (FAC, 27:16–17.) While it is impossible to quantify the costs of compliance with any such injunction, any potential changed practice would increase the amount in controversy. *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011); *see also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1161 (C.D. Cal. 2013) (cost of complying with injunction may be aggregated for CAFA purposes). Accordingly, factoring in the injunctive relief that Plaintiff seeks, the amount in controversy would even further exceed $5,000,000.

24.  For the reasons discussed above and using reasonable assumptions based on Plaintiff's allegations, without admitting any liability whatsoever, the same being expressly denied, Defendant calculates that the recovery sought in the FAC, including penalties, exceeds the sum of $5,000,000.00, exclusive of interest and costs. More specifically, using conservative assumptions, Plaintiff has placed in controversy the following amounts totaling nearly $64,000,000:

| | |
|---|---:|
| Unpaid wage violations: | $8,020,582 |
| Waiting time penalties: | 39,339,451 |
| Wage statement penalties: | 3,637,890 |
| Injunctive and declaratory relief: | (not included) |
| Attorneys' fees: | 12,749,481 |
| **Total:** | **$63,747,404** |

25.  If challenged to do so by Plaintiff or this Court, Defendant can and will present further evidence to establish that Plaintiff's claims exceed the jurisdictional minimum of $5,000,000.00. *Dart Cherokee Basin Operating Co., LLC v. Owens*,

---

[6] $8,020,582.42 (unpaid wages) + $39,339,451.57 (waiting time penalties) + $3,637,890 (wage statement penalties) = $50,997,923.99.
[7] $50,997,923.99 x 0.25 = $12,749,481.

134 S.Ct. 1788 (2014) (explaining that a removing defendant need only present a short and plain statement of the grounds for federal jurisdiction in its removal papers and need not present evidence to establish the amount in controversy until challenged to do so); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) (holding that "when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied").

## TIMELINESS OF REMOVAL

26. The Notice of Removal was timely filed in that it was filed within 30 days of service of the Summons and Complaint and within one year of the filing of the Complaint.

27. No pleadings other than the Summons, Civil Cover Sheet and related documents, which are attached as Exhibit A, and the Complaint have been served on Defendant as set forth above.

28. For the foregoing reasons, this Court has original jurisdiction under 28 U.S.C. sections 1332 and 1441(b).

## VENUE

29. Venue properly lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. section 1441, because Plaintiff's state court complaint was filed in California Superior Court for the County of San Diego, which is within this District. 28 U.S.C. § 84(c).

## CONCLUSION

30. Having fulfilled all statutory requirements, Defendant hereby removes this action from the Superior Court of the State of California, San Diego, to this Court and requests that this Court assume full jurisdiction over this matter as provided by law.

1 | DATED:  March 12, 2020              EPSTEIN BECKER & GREEN, P.C.

2
3                                  By: /s/Michael S. Kun
                                       Michael S. Kun
4                                      Kevin D. Sullivan

5
                                       Attorneys for Defendant
6                                      POPULUS GROUP, LLC

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Firm:50147293v2                                          Notice of Removal