1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY TAYLOR,<br><br>                              Plaintiff,<br><br>     v.<br><br>POPULUS GROUP, LLC, et al.,<br><br>                              Defendants. | Case No. 20-cv-0473-BAS-DEB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br>**(ECF No. 54)** |

On December 20, 2019, Plaintiff Jeffrey Taylor filed a putative class action complaint in San Diego Superior Court against Defendants Populus Group, LLC ("Populus") and Neutron Holdings, Inc., dba Lime ("Lime"). (Compl., Ex. A to Not. of Removal, ECF No. 1-2.) Populus removed the action to federal court. (Not. of Removal, ECF No. 1.) The operative Complaint alleges: (1) failure to pay minimum and regular wages for all "hours worked" in violation of California Labor Code §§ 1194, 1194.2, and 1197.2; (2) failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194; (3) failure to provide accurate itemized wage statements showing all "hours worked" in violation of California Labor Code § 226; (4) failure to timely pay all wages owed at termination or separation from employment in violation of California Labor Code § 203; (5) unfair competition in violation of California Business and Professions Code § 17200,

*et seq.*; (6) and violations of the Private Attorneys General Act of 2004 ("PAGA") pursuant to California Labor Code § 2698, *et seq.* (Third Am. Compl. ("TAC"), ECF No. 27.)

Now pending before this Court is Mr. Taylor's motion for preliminary approval of class action and PAGA settlement. (Mot., ECF No. 54.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Mr. Taylor's motion for preliminary approval of class action and PAGA settlement.

## I.   PROPOSED SETTLEMENT

<u>Settlement Class</u>. The proposed Settlement Agreement applies to class members ("Class" or "Class Members") defined as "all non-exempt employees who were assigned by Populus to work for Lime in California at any time during the Class Period." ("Settlement Agreement" or "SA" ¶ 7, Ex. A to Decl. of J. Jason Hill ("Hill Decl."), ECF No. 54-2.) The "Class Period" refers to December 20, 2015, through February 28, 2020. (*Id.* ¶ 12.) Populus estimates there are 149 Class Members. (*Id.* ¶ 7.) The Class includes a subset of "PAGA Members," defined as "all non-exempt employees who were assigned by Populus to work for Lime in California at any time during the PAGA Period." (*Id.* ¶ 27.) The "PAGA Period" refers to December 13, 2018, through February 28, 2020. (*Id.* ¶ 31.) Populus estimates there are 39 PAGA Members. (*Id.* ¶ 27.) The parties agree that Davtyan Law Firm, Inc. and Cohelan Khoury & Singer will be appointed as Class Counsel. (Mot. ¶ 4.)

<u>Settlement Fund</u>. To settle this action, Populus and Lime agree to deposit a gross settlement amount of $175,000 into a non-reversionary, common fund. (SA ¶ 24; Hill Decl. ¶ 30.) The amount will be distributed as follows:

(i)   a maximum of $58,333.33 for attorneys' fees, of which one-third will be distributed to the Davtyan Law Firm, Inc. and two-thirds to Cohelan Khoury & Singer;

(ii)   a maximum of $4,000 for litigation costs;

(iii)   $5,000 for Mr. Taylor's class representative service payment;

- 2 -

(iv)   a maximum of $4,000 for administration costs;

(v)   $10,000 in civil PAGA penalties, of which 75% ($7,500) will be distributed to the California Labor & Workforce Development Agency ("LWDA"), and 25% ($2,500) will be distributed proportionately to eligible PAGA Members based on the number of pay periods while employed during the PAGA Period;

(vi)   $3,383.75 for employer tax obligations; and

(vii)   a net settlement amount of $90,282.92 to be distributed proportionately to Class Members based on the number of weeks worked during the Class Period.

(SA ¶¶ 24, 29, 41, 67; Hill Decl. ¶ 31.) Populus estimates a total of 4,245 weeks worked by Class Members during the Class Period. (SA ¶ 42.) Accordingly, Class Members may expect to receive an estimated $21.26 for each week worked during the Class Period. (Mem. at 8, ECF No. 54-1.) Eligible PAGA Members will also receive a portion of the $2,500 PAGA Member payment based on the number of pay periods while employed during the PAGA Period. (*Id.*) With an estimated 963 pay periods worked by the estimated 39 PAGA Members, each PAGA Member may expect to receive approximately $2.59 per pay period. (*Id.*)

Class Notice.  The parties agree that Simpluris, Inc. will serve as the settlement administrator.  (SA ¶ 2.)  Populus will provide Simpluris with data and information showing each Class Member's name, most current mailing address, phone number, email address, Social Security number, and dates of employment. (*Id.* ¶ 10.)  Populus will also provide each Class Member's total number of weeks worked during the Class and PAGA Periods. (*Id.*)  After performing a National Change of Address database search to update Class Members' addresses, Simpluris will mail a notice packet to each Class Member containing the Notice of Class Action Settlement, Change of Address form, and a pre-printed return envelope. (*Id.* ¶¶ 69.C, 69.D.1.)  On return of an undelivered notice packet without a forwarding address, Simpluris will perform a skip trace using Accurint and the Class Member's Social Security number. (*Id.* ¶¶ 69.D.3, 69.E.)

*Objecting or Requesting Exclusion.*  Class Members can object to the settlement by submitting a written statement citing the specific reasons for the objection and supporting briefs to Simpluris before the response deadline, as set forth in the Notice of Class Action Settlement.  (SA ¶ 70.A; Not. of Settlement, Ex. 1 to SA.)  Class Members who wish to exclude themselves from the settlement must submit a written statement as directed by the Notice of Class Action Settlement before the response deadline.  (SA ¶ 70.B.)  If a Class Member requests to be excluded from the Class, the Class Member's share of the settlement fund will remain a part of the net settlement amount and be dispersed proportionally among the participating class members.  (*Id.* ¶ 86.B.)  Class Members who properly opt out will not be entitled to any payment from the net settlement amount, will not be bound by the Settlement Agreement, or have any right to object, appeal, or comment thereon.  (*Id.* ¶ 70.B.)  However, if the Class Member opting out is a PAGA Member, he or she will nevertheless still receive a PAGA Member Payment and release only the claims for civil penalties alleged under PAGA.  (*Id.*)  Class Members who do not submit a timely request for exclusion will receive a settlement payment and release all claims alleged in the Complaint.  (*Id.* ¶ 64.)

## II. **LEGAL STANDARD**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

For a class to be certified, a plaintiff must show that all of the prerequisites of Federal Rule of Civil Procedure ("Rule") 23(a), and the requirements of at least one of the categories under Rule 23(b), have been met.  *See Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013).  This requires the court to "conduct a 'rigorous analysis' to determine whether the party seeking class certification has met the prerequisites of Rule

23." *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1125 (E.D. Cal. 2018) (quoting *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 471 (E.D. Cal. 2009)).

The court may approve a proposed settlement only if the court finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Where the parties reach a settlement prior to certification, courts apply a "higher standard of fairness" and make a "more probing inquiry than may normally be required under Rule 23(e)." *Id.*

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs*, 955 F.2d at 1276.

## III. <u>ANALYSIS</u>

### A. Class Certification (for Settlement Purposes Only)

The parties seek class action certification for settlement purposes only. (SA at 17.) Rule 23(a) provides that a class may be certified "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The parties request class action certification under Rule 23(b)(3). (SA at 17.) Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

20cv0473

### 1. Numerosity – Rule 23(a)(1)

The numerosity requirement is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). Populus estimates there are 149 Class Members. (Mem. at 3; Hill Decl. ¶ 13.) The Court finds this number large enough that individual joinder of all Class Members is impracticable, and therefore the numerosity requirement is satisfied. *See Celano*, 242 F.R.D. at 549.

### 2. Commonality – Rule 23(a)(2)

Commonality requires that there be "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

Mr. Taylor asserts there are common questions of whether Populus and Lime failed to pay minimum, regular, and overtime wages for all hours worked; whether they issued accurate wage statements; and whether they timely paid all wages due. (*See* TAC ¶ 48; Mem. at 23.) The Court agrees that there are common questions of law concerning whether certain California Labor Code provisions were violated. (*See* Mem. at 3.) Furthermore, the Court finds the factual issue of whether Populus's rounding system had a non-neutral effect to be common to the class. (*See* Mem. at 12.) Accordingly, the Court finds the commonality requirement is satisfied for the proposed settlement class.

20cv0473

### 3.   Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Mr. Taylor alleges he and all Class Members suffered the same violations as a result of Populus's rounding system.  (*See* TAC ¶ 49; Hill Decl. ¶¶ 12, 61.)  Because Mr. Taylor and the Class Members' claims arise from the same alleged conduct of Populus, the Court finds the typicality requirement is satisfied.

### 4.   Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

20cv0473

Here, there is no indication that Mr. Taylor or his attorneys have a conflict of interest with the Class. (*See* Decl. of Jeffrey Taylor ("Taylor Decl.") ¶ 7; Hill Decl. ¶ 62.)   Mr. Taylor states that he is "not related to any attorney working on the case, [] not aware of any interests [he has] adverse to the interests of the other Class Members, and [does] not have any conflicts that would keep [him] from adequately representing the Class." (Taylor Decl. ¶ 7.)  Mr. Taylor has also actively engaged in discussions with Class Counsel, participated in two Early Neutral Evaluations ("ENE"), and reviewed the terms of the Settlement Agreement. (*See id.* ¶¶ 9, 15.)

Furthermore, the Court does not question the adequacy of Class Counsel. The attorneys have experience in wage and hour class actions and appear able to prosecute this action vigorously. (*See* Hill Decl. ¶¶ 8–10, 45–47; Decl. of Emil Davtyan ("Davtyan Decl.") ¶¶ 4–7.)  Accordingly, the Court finds Mr. Taylor and Class Counsel will fairly and adequately protect the interest of the Class.

### 5.   Predominance and Superiority – Rule 23(b)(3)

#### a.   Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022).  The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2).  Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022; *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.").

Mr. Taylor asserts he and all Class Members suffered wage and hour violations as a result of Defendants' non-neutral timekeeping rounding system.  (TAC ¶¶ 29–36; Hill

Decl. ¶¶ 12, 61.)  He alleges "common questions of law and fact predominate regarding the application of the state and federal certification procedure as well as Defendants' alleged failure to pay wages for all time worked."  (Mem. at 24; *see also* TAC ¶ 48.) Because there were "company-wide policies" that affected the entire Class, (Mem. at 11), and Class Members allegedly suffered the same California Labor Code violations (*id.* at 3, 23), the Court agrees with Mr. Taylor that the issues common to the class predominate such that "there is clear justification" for resolving them in a single adjudication.  *See Hanlon*, 150 F.3d at 1022; *see also Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 451 (E.D. Cal. 2013) ("While the factual underpinnings underlying each Class Member's potential claims may have minor differences, these common issues prevail.").  Thus, the Court finds the predominance requirement is satisfied.

### b.    Superiority

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 448 (N.D. Cal. 2008) (quoting Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996).  The following factors are relevant to this analysis:

> (A)    the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Mr. Taylor asserts "[c]lass treatment is the superior method for resolving the claims of the Class and achieves judicial economy by avoiding multiple suits

- 9 -

and protects the rights of those who may be unable to present individual claims." (Mem. at 24; *see also* TAC ¶ 51.) Populus estimates there are 149 putative Class Members, and each Class Member is expected to receive $21.26 for each week worked. (Mem. at 3, 8.) "Because it is likely that each individual [Class] [M]ember could only pursue relatively small claims, class members have no particular interest in individually controlling the prosecution of separate actions." *See Monterrubio*, 291 F.R.D. at 451; *see also Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). Individual claims would "prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *See Hanlon*, 150 F.3d at 1023. Alternatively, a class action facilitates "the spreading of litigation costs among numerous litigants with similar claims," *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403 (1980), and "encourages recovery for unlawful activity," *see Monterrubio*, 291 F.R.D. at 451. Furthermore, the Court is unaware of any other litigation regarding the claims at issue. Accordingly, the superiority requirement is satisfied.

In sum, the Court provisionally finds the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure have been met for the proposed settlement class.

### B.     Preliminary Fairness Determination

Having provisionally certified the settlement class, the Court must next make a preliminary determination of whether the Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Relevant factors to the fairness determination include, among others:

20cv0473

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal quotation marks and citations omitted).

### 1.     Strength of the Class's Case and Risk of Further Litigation

Although Class Counsel believes Mr. Taylor has a strong case for certification, Class Counsel states Populus and Lime "presented several significant defenses to the claims as well as good faith objections to [Mr. Taylor]'s ability to certify the class." (Hill Decl. ¶ 39.)  For example, Populus maintains this case "requires individualized analysis of the nature of the Class Members' job duties, because the Defendants' practices and procedures varied by location, supervisor, job, and employee, and job assignment." (Mem. at 12.) Class Counsel asserts the Class's "claims involve complex disputed legal and factual issues . . . particularly on the issue of joint employment vis-à-vis Populus and Lime." (Hill Decl. ¶ 41.)  Additionally, Class Counsel notes "the inherent risks and uncertainty of litigation," including denial of certification; if certified, decertification; the inability to maintain representative status on his PAGA claim; a grant of summary judgment or adjudication; the need for a unanimous jury; and the possibility of an unfavorable, or less favorable, result at trial.  (*Id.* ¶ 40.)  Class Counsel argues "[c]ontinued litigation would take substantial time, create risk of no recovery, and possibly confer no Class benefit."  (*Id.*

20cv0473

¶ 42.)  In contrast, the Settlement Agreement "will yield a prompt, certain, and substantial Class recovery without requiring additional time or judicial resources." (*Id.*)  Having considered the strength of the Class's case and the risks involved in further litigation, the Court finds the foregoing considerations weigh in favor of approval of the Settlement Agreement.

### 2.    Extent of Discovery Completed and Stage of Proceedings

The court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement.  *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution.").  "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).  But formal discovery may not be necessary where "the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

Mr. Taylor avers the "[p]arties thoroughly investigated and evaluated the case and engaged in sufficient discovery to support Settlement." (Mem. at 13; *see also* Taylor Decl. ¶ 15.)  The parties attended two ENEs facilitated by Magistrate Judge Daniel E. Butcher and continued negotiations thereafter "through an exchange of written formal demands and counteroffers." (Mem. at 13.)  The parties also exchanged information through formal and informal discovery, including Mr. Taylor's personnel file, eTimecard Quick Guide, 2018-2019 compensation reports, Class Counsel's informal interviews of putative Class Members about their experiences while working for Defendants, and the informal

production of key data points to allow Class Counsel to calculate Class-wide damages. (SA ¶ 56.)   Given the discovery conducted and the stage of proceedings, the Court concludes this factor weighs in favor of preliminary approval of the Settlement Agreement.

### 3.   Experience and Views of Counsel

Because the parties' counsel are the ones most familiar with the facts of the litigation, courts give "great weight" to their recommendations.  *Nat'l Rural*, 221 F.R.D. at 528; *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").   Therefore, the plaintiffs' counsel's recommendations "should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Each of Class Counsel has significant experience with wage and hour class actions. (*See* Hill Decl. ¶¶ 8–10, 45–47; Davtyan Decl. ¶¶ 4–7.)   Based on the factual and legal issues in this case, Class Counsel believes "the proposed Settlement is in the Class'[s] best interest." (Mem. at 14.)   Class Counsel also considered "risks, including difficult issues of joint employment, adverse class certification, decertification, or summary judgment rulings, loss or lesser outcome at trial, post-trial, and appeal, and other perils of litigation that affect the value of all claims." (*Id.*)   Accordingly, giving the appropriate weight to Class Counsel's recommendation, the Court concludes this factor also weighs in favor of preliminary approval.[1]

### 4.   Amount of the Proposed Settlement

Common Fund.   The gross settlement amount is $175,000.  (SA ¶ 24.) After the agreed upon deductions, the net settlement amount reserved for the Class will be $90,282.92. (*Id.* ¶ 67.)  Preliminary approval of a settlement is appropriate if the settlement "falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp.

---

[1] The Court will consider a related factor—the reaction of the class to the Settlement Agreement—at the final approval stage after Class Members have had an opportunity to weigh in on the Settlement Agreement.

20cv0473

2d at 1079.  To determine whether a settlement falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Id.* at 1080.  While courts do not need "a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action," *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012), courts "[have] more than once denied motions for approval where the plaintiffs 'provide[d] no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (quoting *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)).  Here, Mr. Taylor fails to provide information about the maximum value of the Class Members' claims.  His Complaint does not identify the total amount of damages or penalties Class Members might recover if their claims prevailed at trial.  Thus, the Court does not have sufficient information to compare the settlement amount to the relief the class could expect to recover at trial.

Nonetheless, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526.  As mentioned above, Class Counsel asserts "[c]ontinued litigation would take substantial time, create risk of no recovery, and possibly confer no Class benefit," while "the proposed Settlement will yield a prompt, certain, and substantial Class recovery without requiring additional time or judicial resources."  (Hill Decl. ¶ 42.)  Because Class Members will receive an "immediate recovery" rather than "the mere possibility of relief in the future, after protracted and expensive litigation," the Court finds the settlement amount weighs in favor of preliminary approval.  *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526.  However, the Court will order the parties to provide, prior to or at the Fairness Hearing, the "expected recovery balanced against the value of the settlement offer."  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

20cv0473

Attorneys' Fee Provision.  The Settlement Agreement contemplates an award of attorneys' fees and costs to Class Counsel.  (SA ¶¶ 5, 67.)  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).  For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton*, 327 F.3d at 963.  The Ninth Circuit has also warned courts to look for indicia of possible collusion, including a "kicker" provision—where any fees not awarded revert to the defendant—and a "clear sailing agreement"—where the defendant agrees to not object to fees up to a certain amount. *See Bluetooth*, 654 F.3d at 947.

The Settlement Agreement explains "[a]ny portion of the Attorneys' Fees and Costs Payment not awarded shall remain with the Gross Settlement Amount and made available for payments to Participating Class Members."  (SA ¶ 5.)  In other words, the Settlement Agreement does not contain a kicker provision, and any fees not awarded will be made to benefit the Class.  *See Bluetooth*, 654 F.3d at 947.  The Settlement Agreement does, however, contain a clear sailing provision, as Defendants agree to "not oppose Class Counsel's Attorneys' Fees and Costs request in" the amounts specified.  (SA ¶ 79.)  The Court will therefore scrutinize the request for attorneys' fees and costs appropriately.  *See Bluetooth*, 654 F.3d at 947.

The Court notes a maximum award of $58,333.33 would be 33.3% of the gross settlement amount.  (*See* Mem. at 21; SA ¶ 79.)  Generally, when applying the percentage of recovery method to determine fees, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award." *Pac. Enters.*, 47 F.3d at 379 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  That said, fees often range between "20% to 33 1/3% of the total settlement value." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).  Therefore, although the

20cv0473

anticipated fee award of 33.3% would exceed the benchmark, it still may be a reasonable award.

Even so, the Court will further scrutinize the fee award because the earlier a case settles, the greater the concern that a percentage award may amount to a windfall for counsel. *See, e.g.*, *Fischel v. Equitable Life Assur. Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact that the case was settled early in the litigation supports the district court's ruling [not to award class counsel's 25 percent fee award request because] the 25 percent benchmark of the percentage-of-the-fund approach might very well have been a 'windfall.'"). Thus, in order "to ensure a fair and reasonable result," the Court will require Class Counsel to submit their billing records and use the lodestar method to cross-check the fee award at final approval. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 668 (E.D. Cal. 2008).

Class Representative Payment. Mr. Taylor is requesting a Class Representative Service Payment of $5,000. (Mem. at 7; Taylor Decl. ¶ 17.) To evaluate the fairness of a class representative payment, courts consider "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation, . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Mr. Taylor avers the $5,000 service payment is to compensate him for filing the case, working with Class Counsel, participating in ENEs, and risking potential judgment entered in his name and negative impact on future employment opportunities. (Taylor Decl. ¶¶ 16–17.) The Court finds the amount of $5,000 may be excessive in relation to the amount class representatives received in similar cases and in relation to the expected recovery for most Class Members here. *See, e.g.*, *Rodriguez*, 293 F. Supp. 3d at 1134 (finding $3,500 to be reasonable service payment in wage and hour class action where average class member would recover $2,300); *Monterrubio*, 291 F.R.D. at 462–63 (awarding class representative $2,500 where action settled for $400,000 and each class

member would receive $65.97).  Although the Court will preliminarily approve the service payment in the amount sought, Mr. Taylor must further explain at the final approval stage why he is entitled to a class representative service payment that may be excessive in relation to similar cases and the expected recovery for other Class Members here.

### 5.      PAGA Penalties

Mr. Taylor's claims in this action include claims under PAGA.  (Mem. at 17–20.) Under PAGA, any provision of the California Labor Code that provides for the assessment and collection of a civil penalty by the LWDA for a violation of the Labor Code may be recovered through a civil action brought by an aggrieved employee on behalf of herself and other current or former employees.  Cal. Lab. Code § 2699(a).  An employee who brings a claim under PAGA does so as the proxy or agent of the state's labor law enforcement agencies.  *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016).  Because the employee represents the same legal right and interest as state labor law enforcement agencies, a judgment binds not only the employee but also state labor law enforcement agencies and nonparty employees who would be bound by an action brought by the government.  *See id.*

Although there is no binding authority setting forth the proper standard of review for PAGA settlements, California district courts "have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'"  *Arredondo v. Sw. & Pac. Specialty Fin., Inc.*, No. 1:18-CV-01737-DAD-SKO, 2022 WL 396575, at *7 (E.D. Cal. Feb. 9, 2022) (quoting *Haralson*, 383 F. Supp. 3d at 972).  "Because the proposed settlement has a PAGA component, it must also meet the statutory requirements under that act . . . ."  *Id.*

As an initial matter, PAGA requires a proposed settlement be submitted to the LWDA.  Cal. Lab. Code § 2699(l)(2).  On June 3, 2022, Class Counsel electronically submitted the proposed settlement to the LWDA.  (*See* "LWDA Submission", Ex. 1 to Decl. of Service, ECF No. 54-6.)  Thus, the Court finds this requirement satisfied.

The Settlement Agreement also provides for $10,000 in civil PAGA penalties.  (SA ¶ 67.)  Pursuant to PAGA, 75% of the civil PAGA penalties, or $7,500, will go to the LWDA, and 25%, or $2,500, will be distributed proportionally to all PAGA Members.  (*Id.*)  *See also* Cal. Lab. Code § 2699(i).  Mr. Taylor calculated the maximum PAGA civil penalties using the initial violation rate for all 963 pay periods during the PAGA Period, that is, $100 for each pay period in which California Labor Code § 1194 (minimum wage) and § 510 (overtime wages) were violated; and $250 for each pay period in which California Labor Code § 226 was violated (wage statements).  (Mem. at 17–18.)  Mr. Taylor estimates maximum PAGA penalties at $10,000.  (*See* Mem. at 19.)  ("963 pay-periods x $100 civil penalty, and the potential for $250 civil penalty for wage statement violations").

The resulting PAGA allocation represents 5.7% of the gross settlement amount.  The Court finds the amount proposed to settle the Class's PAGA claims is consistent with other PAGA settlements approved by courts.  *See, e.g.*, *Arredondo*, 2022 WL 396575 at *16 (approving $100,000 PAGA settlement that represented 8% of the $1,250,000 gross settlement amount); *Castro v. Paragon Indus., Inc.*, No. 1:19-CV-00755-DAD-SKO, 2020 WL 1984240, at *15 (E.D. Cal. Apr. 27, 2020) (approving $75,000 in PAGA penalties for a California class with a $3,750,000 gross settlement fund).  Because Mr. Taylor meets the PAGA requirements and the PAGA settlement amount is consistent with other PAGA settlements, the Court preliminarily concludes the settlement of Mr. Taylor's claims is fair, reasonable, and adequate.  *See* O'Connor, 201 F. Supp. 3d at 1133.

## C.   Class Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter

- 18 -

an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

As discussed above, the parties agree that Simpluris will serve as the settlement administrator. (SA ¶ 2.)  After conducting a National Change of Address database search and updating the mailing addresses of all Class Members, Simpluris will send each Class Member a notice packet.  (*Id.* ¶¶ 69.C, 69.D.1.)  Here, the proposed notice describes the litigation, the terms of the Settlement Agreement, and each Class Member's rights and options under the settlement.  (Not. of Settlement. at 1–7.)  Having reviewed the proposed notice, the Court finds that the method and content of the notice complies with due process and Rule 23; the notice is the best notice practicable under the circumstances; and the notice shall constitute due and sufficient notice to all persons entitled to notice of the settlement. Therefore, the Court approves the form and content of the proposed notice as set forth in Exhibit 1 to the Settlement Agreement.

## IV.   **CONCLUSION**

In light of the foregoing, the Court **GRANTS** Mr. Taylor's motion for preliminary approval of class action and PAGA settlement and hereby **ORDERS** the following:

(1)   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies a class for settlement purposes only.

(2)   The class shall consist of: all non-exempt employees who were assigned by Populus to work for Lime in California at any time during the Class Period.

(3)   The Court appoints Davtyan Law Firm, Inc. and Cohelan Khoury & Singer as Class Counsel to represent the class.

(4)   The Court appoints Jeffrey Taylor as Class Representative.

(5)    The Court approves Simpluris, Inc. as Class Administrator.

(6)    The Court preliminarily approves the Settlement Agreement and the terms and conditions of settlement set forth therein, subject to further consideration at a Final Approval Hearing.

(7)    The Court will hold a fairness hearing on <u>January 9, 2023, at 11:00 a.m.</u>, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, 221–333 West Broadway, San Diego, CA 92101, for the following purposes:

(a)    finally determining whether the Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, and thus whether the claims of the Class should be certified for purposes of effectuating the settlement; determining whether the proposed settlement of the action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

(b)    considering any motion of Class Counsel for an award of attorneys' fees and costs;

(c)    considering any motion of Mr. Taylor for a class representative service payment;

(d)    considering whether the releases by Class Members as set forth in the Settlement Agreement should be provided; and

(e)    ruling upon such other matters as the Court may deem just and appropriate.

(8)    Any motion in support of the settlement and any motion for an award of attorneys' fees and costs or Mr. Taylor's service award must be filed with the Court no later than the dates specified below.  Class Counsel must submit their billing records with any fee motion.  Any opposition must be filed no later than fourteen days after the motion is filed, and any reply must be filed no

- 20 -

20cv0473

later than twenty-one days after the motion is filed. All other deadlines in the action are stayed pending the fairness hearing.

(9)     Mr. Taylor's motion for final approval of the settlement shall include an analysis of the maximum value of the Class's claims.

(10)    Any motion of Mr. Taylor for a class representative service payment must include an explanation of why he is entitled to a service payment that may be excessive in relation to similar cases and the expected recovery for other Class Members.

(11)    The Court approves the form of the "Notice of Class Action Settlement" ("Not. of Settlement") (Settlement Agreement Ex. 1) and directs the parties and the Settlement Administrator to carry out their obligations under this order and the Settlement Agreement. The Court authorizes the mailing of the Notice to the Class Members by the deadline below.

(12)    The Court incorporates the procedures for requesting exclusion from the settlement and objecting to the settlement as set forth in the Settlement Agreement and the Notice to Class Members.

(13)    The Court specifies deadlines for the settlement and approval process as follows:

//
//
//
//
//
//
//
//
//
//

20cv0473

| Deadline | Event |
|---|---|
| August 30, 2022 | Deadline for Populus to provide Simpluris with Class List and Data. |
| September 29, 2022 | Deadline for Simpluris to mail Notice Packets to Class Members. |
| November 14, 2022 | Deadline for Class Counsel to file motion for attorneys' fees and costs and Class Representative Service Payment |
| November 28, 2022 | Last day for Class Members to respond or object to Settlement Agreement |
| December 12, 2022 | Deadline to file Motion for Order Granting Final Approval |
| January 9, 2023, at 11:00 a.m. | Final Approval Hearing |

**IT IS SO ORDERED.**

**DATED: August 1, 2022**

Hon. Cynthia Bashant
United States District Judge

- 22 -

20cv0473