UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY TAYLOR,<br><br>Plaintiff,<br><br>v.<br><br>POPULUS GROUP, LLC, et al.,<br><br>Defendants. | Case No. 20-cv-0473-BAS-DEB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD (ECF No. 59)** |

      Plaintiff filed this putative class action on December 20, 2019, alleging several wage and hour violations against Defendants. (Compl., Ex. A to Not. of Removal, ECF No. 1-2.) Now before the Court is Plaintiff's unopposed motion for attorneys' fees, costs, and incentive award. (Mem., ECF No. 59.) The Court held a fairness hearing for the parties' class action settlement on January 9, 2023. (ECF No. 61.) The Court notes that no attorneys attended the hearing. (*Id.*) Despite that oversight, for the following reasons, the Court **GRANTS** Plaintiff's motion.

//

//

//

## I. BACKGROUND

This litigation has proceeded for nearly three years. On December 20, 2019, Plaintiff Jeffrey Taylor filed a putative class action complaint in San Diego Superior Court against Defendants Populus Group, LLC ("Populus") and Neutron Holdings, Inc., dba Lime ("Lime"). (Compl.) Populus removed the action to federal court. (Not. of Removal, ECF No. 1.) The operative Complaint alleges: (1) failure to pay minimum and regular wages for all "hours worked" in violation of California Labor Code §§ 1194, 1194.2, and 1197.2; (2) failure to pay overtime wages in violation of California Labor Code §§ 510 and 1194; (3) failure to provide accurate itemized wage statements showing all "hours worked" in violation of California Labor Code § 226; (4) failure to timely pay all wages owed at termination or separation from employment in violation of California Labor Code § 203; (5) unfair competition in violation of California Business and Professions Code § 17200, *et seq.*; (6) and violations of the Private Attorneys General Act of 2004 ("PAGA") pursuant to California Labor Code § 2698, *et seq.* (Third Am. Compl. ("TAC"), ECF No. 27.) Plaintiff Jeffrey Taylor is the Class Representative, and Davtyan Law Firm, Inc. and Cohelan Khoury & Singer are Class Counsel. ("Settlement Agreement" or "SA" ¶¶ 9, 35, Ex. A to Decl. of J. Jason Hill ("Hill Decl."), ECF No. 54-2.)

Class Counsel summarizes, "Class Counsel and/or Plaintiff have conducted substantial investigation, research, and analysis; drafted PAGA charges and four iterations of the complaint; defeated a motion to strike; produced and received formal and informal discovery; drafted briefs for and attended two ENEs; and, after extensive negotiations, reached a settlement." (Mem. at 7.)

To settle this action, Populus and Lime agree to deposit a gross settlement amount of $175,000 into a non-reversionary, common fund. (SA ¶ 24; Hill Decl. ¶ 30.) The amount will be distributed as follows:

(i) a maximum of $58,333.33 for attorneys' fees, of which one-third will

|   |   |   |
|---|---|---|
|   |   | be distributed to the Davtyan Law Firm, Inc. and two-thirds to Cohelan Khoury & Singer; |
|   | (ii) | a maximum of $4,000 for litigation costs; |
|   | (iii) | $5,000 for Mr. Taylor's Class Representative service payment; |
|   | (iv) | a maximum of $4,000 for administration costs; |
|   | (v) | $10,000 in civil PAGA penalties, of which 75% ($7,500) will be distributed to the California Labor & Workforce Development Agency ("LWDA"), and 25% ($2,500) will be distributed proportionately to eligible PAGA Members based on the number of pay periods while employed during the PAGA Period; |
|   | (vi) | $3,383.75 for employer tax obligations; and |
|   | (vii) | a net settlement amount of $90,282.92 to be distributed proportionately to Class Members based on the number of weeks worked during the Class Period. |

(SA ¶¶ 24, 29, 41, 67; Hill Decl. ¶ 31.) Populus estimates a total of 4,245 weeks worked by Class Members during the Class Period. (SA ¶ 42.) Accordingly, Class Members may expect to receive an estimated $21.26 for each week worked during the Class Period. (Mem. Prelim. Approval, ECF No. 54-1 at 16; Notice, Ex. A to Simpluris Decl., ECF No. 60-3 at 10.) Eligible PAGA Members will also receive a portion of the $2,500 PAGA Member payment based on the number of pay periods while employed during the PAGA Period. (Mem. Prelim. Approval at 16; Notice at 10.)

## II. **LEGAL STANDARD**

Courts have an independent obligation to ensure that, like the settlement, the amounts requested for attorneys' fees and any class representative service award are reasonable. *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have the discretion to employ a "percentage-of-recovery method." *Id.*

1  at 942. Typically, courts calculate 25% of the fund as a "benchmark" for a reasonable
2  fee award. *Id.* "The 25% benchmark rate, although a starting point for the analysis,
3  may be inappropriate in some cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
4  1048 (9th Cir. 2002). Thus, court are encouraged to cross-check this method by
5  employing the "lodestar method" as well. *See In re Bluetooth*, 654 F.3d at 944.

6       In the "lodestar method," the court multiplies the number of hours the
7  prevailing party reasonably expended by a reasonable hourly rate for the work. *Id.*
8  at 941. The hourly rate may be adjusted for the experience of the attorney. *Id.* The
9  resulting amount is "presumptively reasonable." *Id.* at 949. However, "the district
10 court . . . should exclude from the initial fee calculation hours that were not
11 'reasonable expended.'" *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001)
12 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983)). The court may then
13 adjust this presumptively reasonable amount upward or downward by an appropriate
14 positive or negative multiplier reflecting a whole host of reasonableness factors
15 including the quality of the representation, the complexity and novelty of the issues,
16 the risk of nonpayment, and, foremost in considerations, the benefit achieved for the
17 class. *In re Bluetooth*, 654 F.3d at 942. The court may find a fee request is excessive
18 but that there is no further evidence class counsel betrayed class interests for its own
19 benefit, and thus uphold the settlement agreement, while lowering the fee award. *Id.*

20      "[I]ncentive awards that are intended to compensate class representatives for
21 work undertaken on behalf of a class are fairly typical in class actions cases" and
22 "do not, by themselves, create an impermissible conflict between class members and
23 their representative[]." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943
24 (9th Cir. 2015). Nonetheless, the court has an obligation to ensure that the amount
25 requested is fair. *In re Bluetooth*, 654 F.3d at 941.

26 **III. ANALYSIS**
27     **A.  Attorneys' Fees**
28      In its Preliminary Settlement Approval Order (ECF No. 56), this Court raised

concerns regarding the attorneys' fee provision. The Court flagged two issues with the proposed fees. First, the Settlement Agreement includes a clear sailing provision—where the defendant agrees to not object to fees up to a certain amount. The Ninth Circuit has warned courts that clear sailing agreements can indicate possible collusion and admonished courts to scrutinize requests for attorneys' fees and costs appropriately. *See Bluetooth*, 654 F.3d at 947.

Second, Class Counsel requests 33.3% of the gross settlement amount in attorneys' fees. (Mem. at 6; SA ¶ 79.) In the Ninth Circuit, the benchmark award is 25%. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Thus, the requested attorneys' fees well exceed the Circuit's benchmark. That said, fees often range between "20% to 33 1/3% of the total settlement value." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010). In order to analyze the attorneys' fees request, the Court required Class Counsel to submit their billing records and use the lodestar method to cross-check the fee award at final approval. *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 668 (E.D. Cal. 2008).

### 1. Percentage of Recovery

Under the percentage-of-recovery method, the court has discretion "to award attorneys a percentage of the common fund." *In re Bluetooth*, 654 F.3d at 942. In determining this percentage, courts consider a number of factors including (1) the results achieved, (2) the risk of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee, and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. The Court finds 33.3% is appropriate in this case.

#### (i) The Results Achieved

The most important factor is the "overall result and benefit to the class from the litigation." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Here, the projected recovery for each Participating Class Member is an average of $747.05 with the estimated highest gross payment being $2,407.94. (ECF

No. 60 at 5.) Overall, the Court finds that the results achieved are good, which is highlighted by the fact that there was no objection to the settlement amount or to the attorneys' fees requested. (*Id.* at 6.)

### (ii) The Risk of Litigation

When, as here, counsel takes a case on a contingency fee basis, there is always an inherent risk. This litigation lasted nearly three years, during which Class Counsel were incurring costs and investing time in the case. Defendants tested Plaintiff's case in a motion to strike (ECF No. 11), which Class Counsel defeated (ECF No. 14). Further, Defendants disputed that Class Members were required to wait in security lines—the basis of Plaintiff's substantive claim. (ECF No. 59-1 at 11.) Class Counsel had no guaranteed recovery and shouldered a significant risk in litigating this case. "[W]here recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). Thus, the risk of the litigation counsels toward approval.

### (iii) The Skill Required and the Quality of the Work

Class Counsel are experienced litigators in the area of employment class actions. (*See* Khoury Decl. ¶¶ 9, 26, 27.) Plaintiff notes, "Class counsel faced a well-funded Defendant with excellent and experienced counsel." (Mem. at 11.) The quality of opposing counsel is relevant to evaluating the skill required and the quality of Class Counsel's work. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). In defeating Defendants' Motion to Strike and negotiating a successful settlement, Class Counsel demonstrated the quality of the work.

### (iv) The Contingent Nature of the Fee

As noted above, Class Counsel were retained on a contingency fee. Generally, the risks associated with a contingency fee justify a higher rate than a non-

contingency pay agreement. *See Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002). Thus, this factor also supports Class Counsel's requested fee.

### (v) Awards Made in Similar Cases

Finally, the one-third attorneys' fees are commensurate with fees in other similar cases. "Cases of under $10 Million will often result in result in fees above 25%." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (citing *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297–98 (N.D. Cal. 1995)). Further, wage and hour class action cases in California often depart from the 25% benchmark. *Contreras v. Worldwide Flight Servs., Inc.*, No. CV 18-6036 PSG (SSx), 2020 WL 2083017, at *6 (C.D. Cal. Apr. 1, 2020) (collecting cases). Indeed, courts in this district have approved 33.3% attorneys' fees in wage and hour class action settlements. *See Yanez v. HL Welding, Inc.*, No. 20-cv-1789-MDD, 2022 WL 788703, at *12 (S.D. Cal. Mar. 15, 2022) (collecting cases approving 33.3% attorneys' fees for wage and hour settlements); *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021) (approving a one-third contingency fee to the same Class Counsel in a wage and hour settlement).

### 2. Lodestar Method

The Ninth Circuit encourages district courts to cross-check their conclusions under the percentage-of-recovery method with the lodestar method, or vice versa. *In re Bluetooth*, 654 F.3d at 944–45. Under the lodestar method, as outlined above, "the district court must calculate the lodestar figure based on the number of hours reasonably expended on the litigation, adjusting the figure to account for the degree of success class counsel attained, along with other factors." *Id.* at 944.

Here, the requested award is $58,333.33. (Mem. at 6.) Class Counsel calculates the lodestar figure to be approximately $149,603.50. (Khoury Decl. ¶ 16, Ex. 1.) This figure assumes Class Counsel's hourly rates are reasonable. But even

assuming without deciding that Class Counsel's proposed rates are inflated,[1] the lodestar figure still validates the percentage-of-recovery method. Indeed, even if the Court cut Class Counsel's rates by 50%, the lodestar figure would far exceed the percentage-of-recovery figure. Therefore, the lodestar method confirms the conclusion that the requested fee award is reasonable.

### B.     Costs

Plaintiff also seeks reimbursement of litigation costs on Class Counsel's behalf. "Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting [the] case." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (2015) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Here, Class Counsel have incurred $1,793.76 in costs. (Ex. 1 to Khoury Decl.) The Court finds these costs ordinary and reasonable. Accordingly, the Court grants Plaintiff's request for $1,793.76 in costs.

### C.     Incentive Award

Last, Plaintiff requests approval of a $5,000 incentive award. (Mem. at 7; Taylor Decl., ECF No. 59-4 ¶ 17.) In its Preliminary Settlement Approval Order, the Court deferred judgment on the Class Representative payment. (ECF No. 56 at 16–17.) The Court requested that Mr. Taylor further explain his role as Class Representative to justify the incentive award. (*Id.* at 17) In response, Mr. Taylor submitted a declaration estimating he spent thirty to forty hours prosecuting this case. (Taylor Decl.) The time included searching for and interviewing attorneys, collecting for documents, communicating with retained counsel, answering written discovery, preparing for a scheduled deposition, speaking with class members, attending two early neutral evaluations, and reviewing and discussing the settlement.

---

[1] The Court notes that Class Counsel's proposed rates far exceed the rates of the only San Diego-based firm listed in their own 2014 billing survey exhibit. (Ex. 4 to Khoury Decl. at 39.) The exhibit does not indicate how rates have changed since 2014.

(*Id.* ¶¶ 7–10.) In addition, Plaintiff was informed that he might be liable for the opposing parties' costs if the litigation was unsuccessful. (*Id.* ¶ 11.) In light of Mr. Taylor's declaration, the Court is satisfied Mr. Taylor's requested $5,000 Class Representative fee is fair and reasonable.

## IV.  CONCLUSION

For the reasons stated above, the Court grants Plaintiff's motion for attorneys' fees, costs, and incentive award. (ECF No. 59). Accordingly, the Court **ORDERS**:

(1) The Court finds that Class Counsel, having expended efforts to secure a benefit to the Class and having conferred a benefit on absent Class Members, are entitled to a fee. The Court approves the application of Class Counsel for an award of $58,333.33 for their attorneys' fees.

(2) The Court awards Class Counsel reimbursement of their litigation costs of $1,793.76.

(3) The Court approves a Class Representative Service Payment of $5,000 to Plaintiff Jeffrey Taylor.

(4) The Court orders the Class Administrator to make these payments in accordance with the Settlement Agreement.

IT IS SO ORDERED.

DATED: January 9, 2023

Hon. Cynthia Bashant
United States District Judge